## TERRANOVA v. HOME OWNERS LOAN CORPORATION.

### No. 17485.

Court of Appeal of Louisiana. Orleans.

Dec. 16, 1940.

Edward Rightor and W. H. Sellers, both of New Orleans, for appellant.

George Montgomery and M. C. Scharff, both of New Orleans, for appellee.

WESTERFIELD, Judge.

This is a suit for damages due to physical injuries sustained by Patricia Terranova, the three year old minor child of Luke Terranova, the plaintiff, in which the sum of $41,750 is claimed. The petition alleges that Patricia was playing on the sidewalk in front of the premises No. 2536 St. Ann Street, which belonged to the defendant, the Home Owners Loan Corporation, at about 6:00 p. m. on May 14, 1938, when a post supporting a gallery on the premises collapsed and fell, striking her on the head and causing a fracture of the skull and of the right ear drum. The father sued for $250 for past and $1,500 for future medical and hospital expenses for his own account and $40,000 for account of his minor child because of the suffering endured and to be endured by her, including $10,000 for the loss of a successful dancing career of which she had given early promise.

The Charity Hospital of Louisiana at New Orleans intervened claiming $26 together with 10% attorneys' fees for hospital treatment given Patricia.

The defendant answered denying responsibility for the accident and averred that it had leased the premises to one John S. Martinolich, the uncle of the injured child, who had assumed responsibility for the condition of the premises and called him in warranty.

There was judgment below dismissing the call in warranty and condemning the Home Owners Loan Corporation to pay to petitioner the sum of $150 for his own account and $2,350 for his minor child. The Charity Hospital of Louisiana at New Orleans was awarded judgment in intervention for the full amount prayed for. Defendant has appealed to this court and plaintiff has answered the appeal asking that the amount awarded be increased.

In argument and in brief in this Court all questions raised by defendant below involving its responsibility for the accident were waived, the sole point at issue being the quantum of damages.

Immediately after the accident the injured child was taken to the Charity Hospital where she remained two days and thereafter to the French Hospital where she was detained about ten days.

Dr. J. N. Ane, radiologist, testified that Patricia sustained two cranial fractures, "a linear fracture in the right posterior parietal area and in the region of the base of the skull, (and another) in the temple region".

Dr. Frank Chetta examined the child in the Charity Hospital. He testified that there was some bleeding from her ear and an X-ray picture was made which revealed the condition as reported by Dr. Ane. It was on Dr. Chetta's recommendation that she was transferred to the French Hospital. When asked whether her injuries could lead to any after effects, Dr. Chetta replied that sometimes these conditions "may lead to epileptic or convulsive seizures in the future".

Dr. Kotz Allen testified that he first saw the child in June, 1938, one month after the accident. He found some abrasions and lacerations around the ear which was discharging pus at the time. He treated her for several months at that time and later on in March, 1939, when she had an abscess of the ear.

Dr. C. L. Brown examined the child in June, 1939, on behalf of the defendant. He testified that he had caused an X-ray picture to be made by Drs. Samuel and Bowie, particularly of the mastoids, but that the picture had failed to reveal any evidence of bone pathology and indicated that the fracture of the skull as well as the drum of the ear had entirely healed.

On the whole we cannot say that the two linear fractures of the skull, which the child sustained, are likely to leave any permanent results. The medical experts inform us that a "linear fracture" is one which does not extend through the width of the bone and, of course, is not as serious as it might be. Prior to her injuries Patricia attended dancing school, but was obliged to discontinue her lessons after the accident. However, she did attend singing school. Her dancing teacher stated that she was very talented and her singing teacher expressed the view that she will probably have a bright future on the radio and stage. So far as we can ascertain from the record, the unfortunte accident she suffered will be no deterrent. The statement of Dr. Chetta that sometimes these fractures result in epileptic or convulsive seizures is not important, for he merely states a possibility and does not undertake to say that in his opinion it is likely to occur in the case of Patricia. Never-

theless, the child's injuries were serious and she should recover substantial damages. In our opinion the amount awarded by the trial court is, under all the circumstances, proper and will not be disturbed, consequently, and for the reasons assigned, the judgment appealed from is affirmed.

Affirmed.